## DRIVER *v.* MARTIN.

### Opinion Delivered January 19, 1901.

ADVERSE POSSESSION—WHAT DOES NOT CONSTITUTE.—Prior to the act of March 18, 1899, payment of taxes on wild and unimproved lands, in connection with fitful acts of ownership, such as cutting trees for fuel and rails, did not constitute such adverse possession as would set the statute of limitations in motion. (Page 553.)

Appeal from Mississippi Circuit Court.

FELIX G. TAYLOR, Judge.

*G. W. Thomason, John M. Moore* and *W. B. Smith,* for appellant.

Appellees' ancestor did not hold actual adverse possession of any portion of the lands in controversy continuously during seven years. He could not prove his possession by declarations to that effect or the understanding of the neighbors. 90 Ga. 52. Fitful acts of ownership, in connection with payment of taxes, are not sufficient. 45 Ark. 81; 49 Ark. 266; 48 Ark. 201; 57 Ark. 104–5. Such intermittent "acts of ownership" as merely going on the land to cut timber several times a year are more in the nature of trespasses than of indications of title. 56 Vt. 165. Such acts are insufficient to constitute adverse possession. 101 N. Y. 67; 71 N. Y. 380; 28 W. V. 54; 78 N. C. 356; 2 N. & McC. 535; 4 Jones, Law, 25; 32 Wis. 478; 82 N. C. 483; 49 Mo. 461; 48 Ark. 312; 49 Ark. 274.

*S. S. Semmes*, for appellees.

Adverse possession is a mixed question of law and fact. 1 Am. & Eng. Enc. Law (2 Ed.) 886. Whilst residence, cultivation, inclosure and improvement are the usual decisive accompaniments of adverse possession, it may be established by other open, visible and exclusive acts of ownership. 1 Am. & Eng. Enc. Law (2 Ed.) 823; 3 Washb. Real Prop. 134; 30 Ark. 655; 40 Ark. 243. The declarations of appellees' ancestor were admissible to show the object of the purchase of the land and the character of the use he proposed to make of it. 1 Am. & Eng Enc. Law (2 Ed.) 891. Adverse possession is not necessarily proved by any specific acts. 1 Am. & Eng. Enc. Law, 823; 3 Washb. Real Prop. 134; 30 Ark. 655; 40 Ark. 243. There was no error in the instructions on this point. Whatever error may have been embodied in the third instruction for appellee was caused by other instructions given. 20 Ark. 8; 23 Ark. 264; 23 Ark. 115.

BATTLE, J. This action was brought by Martha Martin and the other heirs of Dudley Lynch, deceased, against James D. Driver, to recover the possession of a certain tract of land described in their complaint. They allege that Dudley Lynch, under whom they claim, held seven years adverse possession of the land, and thereby acquired title to the same. Upon this possession they base their claim.

The defendant answered, and denied that Lynch acquired title to the land by adverse possession or in any other manner, and alleged that he is vested with the legal title to the same, and is the owner thereof.

The evidence adduced at the trial in this action tended to prove that the land in controversy is wild and unimproved, and is situate one and a half or two miles from the land upon which Lynch resided in his lifetime; that he held color of title to it, and claimed it as his own; and that annually for more than seven years Lynch cut fire wood and made rails of a part of the timber on the lands in controversy, and used the same on his homestead, and paid the taxes on the land sued for. Upon this evidence the plaintiffs, being the heirs of Lynch, recovered judgment for the land. Was the evidence sufficient to support the judgment?

Seven years adverse possession of the land in controversy by the plaintiffs, or those under whom they claim, was necessary to sustain this action. Such possession must have been "actual, open, continuous, hostile, exclusive, and be accompanied by an intent to hold adversely and 'in derogation of' and not in 'conformity with' the rights of the true owner, * * * and must continue for the full period prescribed by the statute of limitations. * * * It must be actual, either of all or part of the land claimed, as the same may be held with color of title or without; because constructive possession follows the title, and there cannot be two possessions of the same land at the same time; and the owner, being in possession by virtue of his title, remains until he is disseized or ousted by another entering and holding for himself. It must be open, in order to give the owner notice of the adverse claim, and to force him to protect his rights, or lose them by a failure to assert them within a period of time allowed him by the statute to do so. It must be continuous, because when it ceases the seizin of the owner revests, and the statute ceases to run; and any subsequent ouster or disseizin forms the beginning of a new period of limitation and of a new adverse possession. It must be hostile, in order to show that it is not held in subordination and subserviency to the title of the

owner. It must be exclusive, because the owner's possession continues until he is disseized, and there can not be two actual possessions of the same premises at the same time; and in case the owner and another are in actual occupation of the same land, the legal possession follows the title. It should be accompanied by the adverse intent, because it is necessary to fix 'the character of the original entry, and determine whether it be an ouster or a mere trespass, or whether the possession be in subordination or in hostility to the true owner.' The possession should be continuous and unbroken during the statutory period so 'as to leave no doubt on the mind of the true owner, not only who the adverse claimant was, but that it was his purpose to keep him out of his land.' " *Ringo* v. *Woodruff*, 43 Ark. 464, 486.

Absence from the land during the period of limitation prescribed by the statute will revest the owner with seizin, and stop the running of the statute, unless the adverse claimant left it under circumstances indicating that he has not left the possession, but still holds it. If he would continue the statute in motion, "he must so leave it that the condition and appearance of the premises themselves show to the world that there is still a person in actual control and exercise of dominion. If he should leave the premises personally, but not in the condition or manner indicated, before the expiration of the time prescribed by the statute of limitations, he acquires no title by adverse possession." *Scott* v. *Mills*, 49 Ark. 266, 274.

The "payment of taxes and the assertion of the exclusive right to lands do not constitute possession or disseize the holder of the true title. A claim of possession, without the fact agreeing therewith, is not to be recognized by law as productive of right. The fitful acts of ownership above detailed, in connection with the payment of taxes and claim of title, were not of such notoriety as to put the owner upon his guard against a continuous disseizin and adverse possession for seven years." *Brown* v. *Bocquin*, 57 Ark. 97, 104. They lack the continuity that is necessary to constitute the seven years' unbroken possession that will bar the recovery of the land by the true owner, and vest the title in the adverse occupant.

They were disconnected trespasses, and vested title in no one.

The act entitled, "An act for the protection of those who pay taxes on land," approved March 19, 1899, (Acts 1899, p. 117,) which provides that unimproved and unenclosed land shall be deemed and held to be in possession of the person who pays the taxes thereon if he have color of title thereto, does not affect the rights of the parties to this action. The taxes referred to in this opinion were paid long before its passage.

Reversed and remanded for a new trial.